UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID LYNN BELL,  )<br>  )<br>    Petitioner,  )<br>  )<br>    v.  )<br>  )<br>UNITED STATES OF AMERICA,  )<br>  )<br>    Respondent.  ) | No. 1:19-cv-01930-SEB-DLP |

**Order Denying Motion for Relief Pursuant to 28 U.S.C. § 2255
and Denying Certificate of Appealability**

For the reasons discussed in this Order, petitioner David Bell's motion for relief pursuant to 28 U.S.C. § 2255 must be **denied**, and the action dismissed with prejudice. In addition, the Court finds that a certificate of appealability should not issue.

**I.  The § 2255 Motion**

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th

Cir. 2013) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997)).

## II. Factual Background

The facts of Bell's crime, as stated by the Seventh Circuit, are as follows.

The defendants in this case are Donald Maggard, David Bell, Jeremy Jackson, and Dorothy Neeley. In one way or another, they were all involved in a vast methamphetamine-distribution conspiracy in and around North Vernon, Indiana from October 2013 through May 2014. Neeley, who lived in Indianapolis, supplied much of the methamphetamine that she and Maggard then distributed to other dealers in the area, including Bell and Jackson. The defendants sold much of that methamphetamine in Maggard and Jackson's home neighborhood, Country Squire Lakes -- a North Vernon subdivision engulfed in drug activity.

Maggard regularly dealt methamphetamine to Bell, who then resold that methamphetamine to other customers. On at least some of these deals, Bell acted as a middleman, locating buyers for Maggard who would purchase methamphetamine from his suppliers for Bell's buyers. Maggard and Bell often discussed the details of these transactions on the phone and through text messages. And on at least one occasion, Bell joined Maggard on his trip to purchase methamphetamine from a supplier.

Neeley was Jackson's primary source for methamphetamine. On April 5, 2014, Neeley sold Jackson a particularly potent batch of capsulated methamphetamine that ultimately killed Jackson's wife Jessie. Jessie's death became a focal point of the government's case in the defendants' trial, so the details of that day are important for this appeal.

Early that day, Jackson and Jessie consumed some of Neeley's methamphetamine, and Jessie overdosed. A few hours later, Amanda Hadley and Christina Rodgers -- two of Jackson's friends who were visiting his home -- noticed that Jessie was sweating and convulsing in bed. Because Jackson was not assisting her, Hadley and Rodgers went into the bedroom and applied an icepack to her forehead. Jackson then asked Hadley and Rodgers to leave the room, so he could have sex with Jessie. Hadley and Rodgers complied, leaving Jackson's home.

Shortly thereafter, Jackson texted Desiree Booker, another friend, about Jessie's condition. Jackson sent Booker a photograph of Jessie, who was now unconscious. Two hours later, Booker and her girlfriend, Kylie Day, arrived at Jackson's home. Jessie was still in bad shape, yet Jackson was not tending to her. Instead, he was playing video games and listening to music. Jackson explained to Booker and Day that he and Jessie had taken a strong dose of methamphetamine and that he believed that Jessie was faking an overdose. When Booker and Day

> asked if they could take Jessie to the hospital, Jackson refused. Booker and Day then left.
>
> Jackson then called Hadley and Rodgers, asking them to "come over here and help [him] before [he] knock[ed] this bitch out," referring to Jessie. Hadley and Rodgers returned to Jackson's home and found Jessie collapsed on the floor. Hadley attempted CPR, and when Jackson refused to call an ambulance, Rodgers called one. Before the ambulance arrived, Jackson disposed of his drugs and paraphernalia by passing them to a neighbor out the back door of his home.
>
> When the paramedics arrived, Jessie was still alive but unconscious. They rushed her to the hospital but could not revive her. Jessie died at the hospital early the following morning. A sample of Jessie's blood tested positive for amphetamine and methamphetamine at six or seven times the level of a fatal dose. An autopsy confirmed Jessie's cause of death to be a methamphetamine overdose.
>
> Meanwhile, the government had been engaged in an extensive investigation of the entire conspiracy. As part of its investigation, the government sought and obtained two orders authorizing wire and electronic surveillance of Maggard's phones. Through this surveillance, the government intercepted communications between Maggard, Bell, and Neeley, among many others. Many of these communications concerned the defendants' drug activity.
>
> A grand jury indicted the defendants (and fifteen others) on twenty-three counts associated with their conspiracy to distribute methamphetamine. Specifically, Maggard was charged with conspiracy to distribute methamphetamine, unlawful use of a cellphone to facilitate the distribution of methamphetamine, and possession of methamphetamine with intent to distribute. Bell was charged with conspiracy to distribute methamphetamine and unlawful use of a cellphone to facilitate the distribution of methamphetamine. Jackson was charged with conspiracy to distribute methamphetamine and distribution of methamphetamine. And Neeley was charged with conspiracy to distribute methamphetamine, two counts of distribution of methamphetamine, and possession of methamphetamine with intent to distribute. The indictment also included allegations about several applicable sentencing enhancements, only one of which is relevant on appeal: "that death resulted from the use of methamphetamine distributed by [Jackson and Neeley]."

*United States v. Maggard*, 865 F.3d 960, 964–65 (7th Cir. 2017).

Before trial, Bell moved to sever his trial from that of Jackson and Neely. *United States v. Maggard*, 1:14-cr-00096-SEB-TAB-8 ("Crim Dkt."), dkt. 594. His motion was denied. Crim Dkt. 645. At trial, all of the defendants except Bell were represented by counsel. Crim. Dkts. 783-792.

3

Bell chose to represent himself with standby counsel. *Id.* After a ten-day trial, the jury convicted the defendants of all charges. Crim. Dkt. 794. The Court sentenced Bell to an aggregate term of life imprisonment followed by ten years of supervised release. Crim. Dkt. 920.

Bell appealed to the Seventh Circuit alleging the following grounds for relief: 1) the district court erred when it allowed a government witness to give expert testimony without properly vetting the witness' credentials; 2) the Court erred when it allowed the same witness to testify regarding Bell's mental state; 3) Bell should have been granted access to grand jury materials; and 4) prosecutorial vindictiveness. *See Maggard*, 865 F.3d at 966. In denying Bell's appeal, the Seventh Circuit found that: 1) the wiretap application met the necessity requirement; 2) joint trial with co-conspirators did not deprive defendants of a fair trial; and 3) the evidence was sufficient to support a conviction for conspiracy to distribute methamphetamine. *Id.* at 960. Bell subsequently filed a petition for writ of certiorari, which the United States Supreme Court denied. *See Bell v. United States*, 138 S. Ct. 2014 (2018).

On May 13, 2019, Bell filed this motion for post-conviction relief pursuant to § 2255. Bell alleges that his counsel was constitutionally ineffective for five reasons, specifically that: 1) his counsel failed to provide him discovery materials until days before trial; 2) trial and appellate counsel failed to challenge the amendments to the superseding indictments; 3) trial and appellate counsel failed to effectively obtain a motion to sever his trial; 4) standby counsel failed to provide assistance during trial and sentencing; and 5) appellate counsel failed to raise all relevant issues on appeal. *See* dkt. 2. Bell also alleges the following twelve violations of his Fifth and Sixth amendment rights: 1) being housed at Henderson County Detention Center in Kentucky which was 175 miles away from the district court; 2) the magistrate judge talked him into dismissing his first motion to terminate counsel; 3) the district court took an excessive amount of time to grant self-

representation; 4) the government relied on false testimony and emotional prejudice during trial to invoke a guilty verdict; 5) improper security measures taken by the court during trial; 6) jury instructions were confusing and improper; 7) the district court relied on flawed drug quantity calculation at sentencing; 8) 21 U.S.C. § 841 is improper; 9) Federal Rules of Criminal Procedure 8 and 14 were vague and failed to allow Bell a severed trial; 10) the denied access to wiretap evidence obstructed Bell's ability to cross examine government witnesses; 11) cumulative errors led to an unfair trial; and 12) the First Step Act has caused sentencing disparities. *Id.*

### III.  Discussion

#### A. Ineffective Assistance of Counsel

In support of his § 2255 motion, Bell first asserts that he received ineffective assistance from his attorney. A petitioner claiming ineffective assistance of counsel bears the burden of showing (1) that counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011). If a petitioner cannot establish one of the *Strickland* prongs, the Court need not consider the other. *Groves v. United States,* 755 F.3d 588, 591 (7th Cir. 2014). To satisfy the first prong of the *Strickland* test, a petitioner must direct the Court to specific acts or omissions of his counsel. *Wyatt v. United States,* 574 F.3d 455, 458 (7th Cir. 2009). The Court must then consider whether in light of all of the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Id.* To satisfy the prejudice component, a petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### 1. Discovery Materials

First, Bell asserts that his former trial counsel was ineffective for failing to provide him with certain discovery material. In his brief, however, Bell acknowledges that counsel provided him the discovery material after he was granted permission to represent himself. Furthermore, Bell has attached letters from counsel showing that he provided Bell "with any and all material disclosed by the Government in proceeding to trial, except for materials that could not be possessed by an incarcerated individual per jail policy and material expressly prohibited by court order" and allowed him access to review any material (discs containing wiretaps and Title III orders, applications, and affidavits) that he was not permitted to physically possess due to his incarceration. *See* dkt. 2-1 at 44-46. As the United States points out, Bell's argument on this ground is unclear. This Court finds that counsel's performance was not deficient.

Furthermore, Bell fails to show how he was prejudiced by any alleged deficiency. To the extent that Bell argues that he did not receive the physical materials "in a timely manner," dkt. 2 at 10, he provides no specific argument showing how receiving certain material any earlier would have benefited him. Accordingly, he is not entitled to relief on this basis. *Strickland*, 466 U.S. at 694 (requiring a showing that "but for counsel's unprofessional errors, the result of the proceeding would have been different.").

### 2. Amendments to the Superseding Indictment

Next, Bell contends that pretrial counsel provided ineffective assistance by not challenging the changes made to the second superseding indictment, specifically the addition of Jackson as a defendant, the removal of defendants who were not proceeding to trial, and the change in duration of the conspiracy. However, Bell's only specific allegation of resulting prejudice is that the addition of Jackson allowed the government to discuss "highly prejudicial evidence" about Jessie's

death by overdose. In short, Bell's argument on this ground is essentially an argument that Jackson's trial should have been severed from his. However, Bell raised this exact argument on appeal, and the Seventh Circuit rejected it on both procedural and substantive grounds. *See Maggard*, 865 F.3d at 971. Therefore, because Bell cannot show any prejudice, he is not entitled to relief on this basis. *Groves*, 755 F.3d at 591 (explaining that if a petitioner cannot establish one of the *Strickland* prongs, the Court need not consider the other).

### 3. Motion to Sever

Next, Bell argues that his pretrial counsel was deficient for failing to obtain a severed trial. As stated above, this issue was already raised and denied in Bell's appeal. *See Maggard*, 865 F.3d at 971 ("Maggard and Bell waived their severance arguments by failing to renew their motion at the close of evidence despite having an opportunity to do so. At any rate, even absent a waiver, the court didn't abuse its discretion in denying Maggard and Bell's motion to sever."). Bell cannot use a § 2255 motion to re-assert a claim that was decided on direct appeal. *See Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) ("A Section 2255 motion is neither a recapitulation of nor a substitute for a direct appeal.") (internal quotation omitted)). Thus, habeas relief is not available to Bell on this ground.

### 4. Assistance of Standby Counsel

Next, Bell asserts that his trial standby counsel was ineffective for not advising him to renew his motion to sever at the close of evidence and that as a result, he suffered "actual prejudice." Dkt. 2 at 20-21. In response, the United States correctly points out that the severance motion was appealed and decided. *See* dkt. 25 at 15. In his reply, Bell persists in arguing that "severance review **could have been waived**" (emphasis in original)." The Court finds this argument unavailing.

7

Here, the record clearly shows that Bell suffered no actual prejudice as a result of his standby counsel's failure to advise him to renew his motion to sever. As stated above, despite the potential waiver, the Seventh Circuit considered on the merits whether the Court abused its discretion by denying Bell's motion to sever. *See Maggard*, 865 F.3d at 971 (discussing the merits of Bell's claim and finding "even absent a waiver, the court didn't abuse its discretion in denying Maggard and Bell's motion to sever."). Because Bell was not denied substantive review of this issue on appeal and thus cannot show any prejudice, *see Maggard*, 865 F.3d at 971, no relief is warranted on this basis. *Groves*, 755 F.3d at 591.

### 5. Assistance of Appellate Counsel

Next, Bell argues that his appellate counsel was ineffective for failing to raise certain issues on appeal. "To prevail on a claim that appellate counsel's performance was constitutionally deficient, [a petitioner] must show not only that the claims omitted from his direct appeal would have been meritorious, but that they were 'significant and obvious' and 'clearly stronger' than the issues counsel *did* raise." *Clark v. United States*, 680 F. App'x 470, 473 (7th Cir. 2017) (quoting *Blake v. United States*, 723 F.3d 870, 888 (7th Cir. 2013)). Under this standard, the district court should "examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986). "Significant issues which could have been raised should then be compared to those which were raised." *Id.* The presumption of effective assistance of counsel will generally only be overcome "when ignored issues are clearly stronger than those presented." *Id.* To show prejudice in this context, a defendant must show that, absent the inadequate performance, "there is a reasonable probability that his case would have been remanded for a new trial[.]" *Howard v. Gramley*, 225 F.3d 784, 790 (7th Cir. 2000).

Here, Bell's claim of ineffective assistance of appellate counsel fails because he has failed to establish that any issued not raised by his appellate counsel was "clearly stronger" than the two issues his appellate counsel did raise. His argument on this point is wholly conclusory. *See* dkt. 2 at 23-25. He fails to even discuss the arguments that his appellate counsel did raise, except to say that they "both suffered from possible procedural defaults." *Id.* at 24. However, the two issues appellate counsel raised were both considered on the merits and were strong enough to generate a 17-page published opinion from the Seventh Circuit. *See Maggard*, 865 F.3d at 960-977. Moreover, Bell has provided a letter from appellate counsel that clearly demonstrates the tactical reasoning behind his decision to pursue the issues he did. Specifically, in response to Bell's discontent after reviewing the appellate brief, appellate counsel replied:

> The brief presents those issues which have merit. Other issues that you brought up in your letters would have been meritless. Preserving meritless issues is nonsensical since they have no reason of gaining you any relief even if preserved. In fact, an attorney can be sanctioned for raising frivolous issues on appeal. I have been doing criminal appeals for nearly 40 years, and the presentation made in the brief is not "generic." These are issues that are vital to your defense and gaining relief.

Dkt. 2-1 at 15.

Appellate counsel is under no obligation to brief every conceivable argument on appeal, and it is not incompetence for counsel to refrain from raising those issues, which in counsel's judgment, are without merit. *See Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015). To the extent that Bell argues on reply that his appellate counsel's experience and skill should be second-guessed, dkt. 26 at 5, the Court finds such arguments unavailing. *See Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996) ("Genuinely strategic decisions... will not be second-guessed."); *see also Johnson v. Thurmer*, 624 F.3d 786, 792 (7th Cir. 2010) (Courts "do not second guess the reasonable tactical decisions of counsel.").

On this record—and absent any valid argument from Bell—the Court cannot conclude that the issues deemed frivolous by Bell's appellate counsel were "clearly stronger" than the issues appellate counsel did raise. Because Bell has not shown that his counsel's performance was deficient, his claim of ineffective-assistance-of-appellate counsel fails.

### B. Fifth and Sixth Amendment Arguments

Finally, in addition to his ineffective assistance of counsel claims, Bell raises twelve additional claims that his Fifth and Sixth Amendment rights were violated. *See* dkt. 2. In response, the United States argues that Bell's claims are procedurally defaulted. *See* dkt. 25 at 17-20. The Court agrees.

"Any claim that could have been raised originally in the trial court and then on direct appeal that is raised for the first time on collateral review is procedurally defaulted." *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017) (citing *Hale v. United States*, 710 F.3d 711, 713–14 (7th Cir. 2013); *Massaro v. United States,* 538 U.S. 500, 504 (2003)). A § 2255 petition is not a substitute for direct appeal. *United States v. Bania*, 787 F.3d 1168, 1172 (7th Cir. 2015); *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). However, constitutional claims may be raised for the first time in a collateral attack if the petitioner can show cause for the procedural default and prejudice from the failure to appeal. *Massaro,* 538 U.S. at 504. In order to show cause for a procedural default, the petitioner must demonstrate that some objective factor external to the record impeded his efforts to bring a claim on direct appeal. *Coleman v. Thompson,* 501 U.S. 722, 753 (1991). If a petitioner is unable to demonstrate both cause and prejudice, he may be able to obtain habeas review only if he can persuade the court that the dismissal of his petition would result in a fundamental miscarriage of justice – that is, "in an extraordinary case, where a

constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 495 (1986).

Bell's additional Fifth and Sixth Amendment claims could have been raised on direct appeal but were not. Therefore, because the claims are procedurally defaulted, *see Delatorre*, 847 F.3d at 843, the Court must consider whether Bell adequately points to cause and prejudice to warrant a waiver of the procedural default. *Smith v. McKee*, 598 F.3d 374, 385 (7th Cir. 2010).

Here, Bell fails in his brief to acknowledge the procedural default or address why this Court should consider the procedurally defaulted claims. Furthermore, in reply to the United States' argument concerning procedural default, Bell offers no counterargument that the issues are not defaulted, nor does he demonstrate cause and prejudice to overcome the default. To the extent that Bell attempts to rely on the alleged ineffective assistance of appellate counsel to justify not raising these issues on appeal, his argument fails because the Court found above that his ineffective assistance of appellate counsel claim lacks merit. *See Martin v. Evans*, 384 F.3d 848, 855 (7th Cir. 2004) ("Because [the petitioner's] underlying ineffective assistance of counsel claims lack merit, the argument similarly fails as an assertion of cause."); *see also Buelow v. Dickey* (7th Cir. 2010) ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland*..., we discern no inequity in requiring him to bear the risk of attorney error that results in procedural default.... 'Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial.'") (quoting *Taylor v. Illinois*, 108 S.Ct. 646, 657 (1988)).

Because Bell cannot show cause for the procedural default, nor does he argue that he is actually innocent such that dismissal of his petition would result in a "fundamental miscarriage of

11

justice," *Murray*, 477 U.S. at 495, habeas relief is not available to Bell on these claims. *Delatorre*, 847 F.3d at 843.

## IV.     Denial of Hearing

An evidentiary hearing is "not required when 'the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Lafuente v. United States,* 617 F.3d 944, 946 (7th Cir. 2010) (quoting 28 U.S.C. § 2255(b)). That is the case here. A hearing is not warranted under these circumstances.

## V.     Conclusion

For the reasons explained in this Order, Bell is not entitled to relief on his § 2255 motion. There was no ineffective assistance of counsel, his other claims are procedurally defaulted, and no evidentiary hearing is warranted. Accordingly, his motion for relief pursuant to § 2255 is **denied** and this action is **dismissed with prejudice**.

Judgment consistent with this Order shall now issue and the Clerk shall **docket a copy of this Entry in No. 1:14-cr-00096-SEB-TAB-8**. The motion to vacate, Crim. Dkt. [1158], shall also be **terminated** in the underlying criminal action.

## VI.     Denial of Certificate of Appealability

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition. Rather, he must first request a certificate of appealability. *See Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014). Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 Proceedings, and 28 U.S.C. § 2253(c), the Court finds that Bell has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling."

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

  **IT IS SO ORDERED.**

Date:   1/26/2021

*[Signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

DAVID LYNN BELL
12333-028
HAZELTON USP
P.O. Box 2000
Bruceton Mills, WV 26525